# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MARK SHAUN CLOUGH, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-1053-CLS |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Claimant, Mark Clough, commenced this action on July 9, 2018, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for supplemental security income benefits. Claimant also filed a motion to correct the administrative record to include the September 12, 2017 evaluation of Dr. David Wilson.[1]

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

---

[1] Doc. no. 14.

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. In addition to requesting a correction of the administrative record, claimant contends that the Appeals Council erroneously failed to review Dr. Wilson's report, and that the ALJ improperly considered the opinions of the treating and evaluating physicians.

## I. DR. WILSON'S SEPTEMBER 12, 2017 REPORT

Dr. David Wilson performed a consultative psychological examination on September 12, 2017, *after* the ALJ's July 3, 2017 hearing decision. Claimant's attorney submitted a letter to the Appeals Council on October 20, 2017, stating claimant's reasons why the Appeals Council should overturn the ALJ's denial decision. That letter summarized Dr. Wilson's September 12, 2017 evaluation and argued that it should be considered as new and material evidence,[2] but claimant's attorney did not attach a copy of the evaluation, and the Appeals Council did not receive a copy by any other means. The Appeals Council considered claimant's letter but found that it did "not provide a basis for changing the Administrative Law Judge's decision."[3] Accordingly, the Appeals Council denied claimant's request for

---

[2] Tr. 305-45.

[3] Tr. 1.

review on May 14, 2018.[4]

After appealing the Commissioner's final denial decision to this court, claimant filed a motion on February 19, 2019, to correct the administrative record by including a copy of Dr. Wilson's September 12, 2017 evaluation.[5] Claimant attached a copy of the evaluation to his motion, and that was the first occasion on which the evaluation was placed in this court's record.

The Commissioner filed two responses to claimant's motion. First, on March 20, 2019, she filed a "Supplementation to Correct Administrative Record."[6] Attached to that document is a "Supplemental Certification" signed by Michael Sampson, the Social Security Administration's Chief of the Court Case Preparation and Review Branch 3, Office of Appellate Operations. Sampson certified that "the document annexed hereto is a true and accurate copies [*sic*] of medical records from Gadsden Psychological Services/Dr. David Wilson which was inadvertently omitted from the administrative record in the case of Mark Shaun Clough, certified on August 11, 2018."[7] The attachment to the Supplemental Certification included only the first page of Dr. Wilson's September 12, 2017 evaluation, even though the copy of the

---

[4] *Id.*

[5] Doc. no. 14.

[6] Doc. no. 20.

[7] Doc. no. 20-1, at ECF 1 (Supplemental Certification).

evaluation attached to claimant's motion is seven pages long.[8]

The Commissioner filed a separate "Response in Opposition to Plaintiff's Motion to Correct the Record" on April 18, 2019, asserting that, because the Appeals Council received only one page of Dr. Wilson's September 12, 2017 evaluation, claimant failed to show that the entire evaluation was before the Appeals Council.[9] The Commissioner also argued that, even if the September 12, 2017 evaluation were considered in its entirety, it would not warrant remand pursuant to sentence six of 42 U.S.C. §405(g).

This court entered an order on April 19, 2019, requiring claimant to file a reply brief by May 3, 2019, addressing "the Commissioner's assertions that only one page from Dr. Wilson's assessment was presented to the Appeals Council, and that remand is not warranted under sentence six of 42 U.S.C. §405(g)."[10] Claimant failed to comply with that order. Accordingly, claimant has not demonstrated that the entire September 12, 2017 evaluation ever was submitted to the Appeals Council. In other words, the copy of the administrative record certified to this court includes all of the pages that were received by the Appeals Council. Because there is no indication that the administrative record is incomplete, claimant's motion to correct the record will

---

[8] *See* doc. no. 20-1, at ECF 2 (first page of Dr. Wilson's evaluation); doc. no. 14-1 (Dr. Wilson's entire evaluation, attached to claimant's Motion to Correct Administrative Record).

[9] Doc. no. 21.

[10] Doc. no. 22, at 1.

be denied.

The substantive briefs claimant filed in support of his claim argued that remand was warranted because the *Appeals Council* failed to consider Dr. Wilson's September 12, 2017 assessment.[11] Because the Appeals Council never received the entire assessment, that argument is without merit. Additionally, because claimant failed to comply with this court's April 19 order, he has never asserted any substantive argument that remand is warranted for consideration of Dr. Wilson's entire report under sentence six of 42 U.S.C. §405(g). Accordingly, the court will not consider that argument. There has been no reversible error with regard to Dr. Wilson's assessment.

## II. PHYSICIAN OPINIONS

Claimant also argues that the ALJ improperly considered the opinions of the consultative examining physicians. Social Security regulations provide that, in considering what weight to give any medical opinion, the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 416.927(c). *See also*

---

[11] *See* doc. no. 8 (Memorandum in Support of Disability), at 21-30; doc. no. 16 (Reply in Support of Disability), at 2-4.

*Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). Additionally, the ALJ is not required to accept a conclusory statement from a medical source that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(d).

## A.    Dr. Prince

Dr. Daniel Prince conducted a consultative physical examination on August 31, 2012, and reviewed all of claimant's medical records. Claimant reported a history of epilepsy resulting in the loss of his driver's license, fractures of both legs from an automobile accident, and a broken back from a fall. The physical examination revealed sluggish reflexes in the legs, and straight leg raise tests were positive in the right leg but negative in the left. His cervical spine was nontender and fully mobile. There was mild deformity of the left clavicle, adequate shoulder mobility, and a grossly deformed left wrist, but grip and pinch strength were adequate. Claimant's lumbar flexion was reduced 35%, and he exhibited paraspinal muscle tenderness in the bilateral lower thoracic and upper lumbar areas. His hips were tender, with the right side worse than the left. Similarly, claimant experienced 40% impairment of his

right hip mobility, but only 10-15% impairment of his left hip. His knees displayed

slight crepitus but no fluid. His right leg extension was reduced by ten degrees, but

his ankles and feet were normal except for some crepitus. Dr. Prince stated:

> To me this is fairly simple. After interviewing the claimant and his girlfriend and reviewing the documents, it would make sense that he would falsify information regarding his history of seizures so that he could try to maintain a valid driver's license in the past.[12] He was never able to afford complete healthcare. He is lucky that he was able to do anything after his car accident in 2000 and because of the seizure and falling off a roof in 2009, breaking his back these are problematic issues regarding employment. [*sic*] The psychology evaluation plus the fact this man could not fill out his history form and had to depend on a girlfriend to do so add to his list of problems. He may be capable of sitting in a chair for short periods of time and doing certain things, but he does not have the intellectual functioning partly due to his lack of education, his lifestyle, and his epilepsy.

Tr. 454 (footnote supplied). Dr. Prince concluded that claimant experienced

"[c]omplete, permanent, chronic and total disability secondary to residuals of multiple

fractures, epilepsy, grand mal seizure activity, generalized anxiety disorder, and

borderline intellectual function."[13] Dr. Prince also completed a Physical Capacities

Form. He stated that claimant could sit for forty-five minutes at a time, and for a total

of two hours, during a work day. He could stand for fifteen minutes at a time, and for

a total of one hour, and he could walk for six minutes at a time, and for a total of one

---

[12] Dr. Prince stated, while reciting claimant's past medical history, that claimant "has a long history of being less than honest about his epileptic seizure history so that he could maintain [a] driver's license in the state of Alabama and so that he could try to work." Tr. 452 (alteration supplied).

[13] Tr. 452-54 (alteration supplied).

hour. He could occasionally lift up to twenty pounds and occasionally carry up to ten pounds. He could occasionally use both arms and hands to push and pull, but he could never use his legs and feet for those functions. He could never squat, but he could occasionally bend, crawl, climb, and reach. He was moderately restricted from marked changes in temperature and humidity, and from exposure to dust, fumes, and gasses, and totally restricted from exposure to unprotected heights, moving machinery, and driving automotive equipment. He could occasionally use his hands for grasping, fine manipulation, fingering, and handling. His conditions would last twelve or more months.[14]

The ALJ afforded Dr. Prince's assessment little weight. He observed that Dr. Prince's opinion about claimant's ability to work was a decision reserved to the Commissioner, and he concluded that Dr. Prince's overall assessment was "inherently less persuasive" because it was "solicited on behalf of the claimant's representative."[15] The ALJ also reasoned that Dr. Prince's opinion was "remote and not consistent with the claimant's activities of daily living, work history, or the medical evidence of record."[16]

Claimant correctly points out that it is improper to reject a physician's

---

[14] Tr. 455-57.

[15] Tr. 24.

[16] *Id.*

8

assessment simply because the assessment was requested by the claimant's attorney.

*See Tavarez v. Commissioner of Social Security*, 638 F. App'x 841, 847 (11th Cir.

2016) (quoting *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *Moss v. Astrue*,

555 F.3d 556 (7th Cir. 2009)) ("'[T]he mere fact that a medical report is provided at

the request of counsel or, more broadly, the purpose for which an opinion is provided,

is not a legitimate basis for evaluating the reliability of the report.'") (alteration

supplied). Even so, that was not the sole basis for the ALJ's rejection of Dr. Prince's

assessment. The ALJ's conclusion about the inconsistency of Dr. Prince's opinion

with the remainder of the record is supported by substantial evidence.

## B.    Dr. Morgan

Dr. Keith Morgan conducted a consultative physical examination on April 15,

2015. Claimant reported seizure disorder, back pain, and leg pain. Dr. Morgan's

general examination findings revealed

> a well-developed, well-nourished claimant who is cooperative and does
> not appear acutely ill. He does demonstrate pain behaviors during the
> examination, particularly with examination of the lumbar spine. His
> effort during this part of the examination was questionable at best. He
> is able to transfer independently. He was observed holding a pen
> without difficulty as he signed his name today. He is able to pick up a
> sheet of paper without difficulty using each hand.

Tr. 381. Claimant had full range of motion of the cervical and lumbar spine, but

tenderness to palpation throughout the cervical and lumbar paraspinal muscles. He

also had full range of motion in his bilateral upper and lower extremities, with no increased joint temperature, no ulnar deviation, and no varicosities, brawny edema, or claudication-like symptoms. His neurological examination was normal. Dr. Morgan assessed claimant as experiencing status-post motor vehicle accident with broken right femur and rod placement, epilepsy, and status post fractured back. Dr. Morgan concluded that claimant could only sit and stand for ten minutes each, walk for four to five minutes, travel for one hour, and lift and carry eight pounds for ten steps. All of his limitations were the result of lower back pain, and they were identical to the limitations claimant reported to Dr. Morgan at the beginning of the examination.[17]

The ALJ afforded Dr. Morgan's assessment no weight, stating that "[t]he extreme restrictions assessed by Dr. Morgan are entirely inconsistent with the relatively benign findings noted on physical examination and are not consistent with the record as a whole."[18] The ALJ also reasoned that Dr. Morgan's assessment did not support a finding of disability because claimant demonstrated normal gross and fine motor skills and normal musculoskeletal and neurological examinations. The ALJ found that claimant's allegations of pain were inconsistent with the record

---

[17] Tr. 380-91.

[18] Tr. 24 (alteration supplied).

because his pain medications were effective at treating his symptoms.[19]

Claimant asserts that the ALJ improperly substituted his opinion for Dr. Morgan's, but this court disagrees. To the contrary, the ALJ adequately articulated his reasons for rejecting Dr. Morgan's assessment, and his conclusions were in accordance with applicable law and supported by substantial evidence. In addition to the reasons articulated by the ALJ, this court notes that the restrictions imposed by Dr. Morgan seem to be based entirely upon claimant's subjective complaints, not upon any examination findings.

## C.    Dr. Bentley

Dr. Jack Bentley provided two consultative psychological assessments. The first assessment occurred on October 7, 2010. Claimant reported increased depression since breaking his back in August of 2009. He also experienced dysphoric mood, excessive anxiety, periodic panic attacks, and grief over his loss of lifestyle. Claimant had never received formal psychiatric treatment or taken medication to treat anxiety or depression. During the mental status examination, claimant described no deterioration in his daily living skills, and he ambulated easily around the office. Dr. Bentley observed:

> There was no impairment in his receptive or expressive communication skills. His tertiary and immediate memories were intact. The claimant's mood was reasonably cheerful and congruent with his

---

[19] Tr. 22.

affect. He was rather anxious but there were no indications of restlessness. There was no evidence of phobias, obsessions, or unusual behaviors.

He was able to recall two of three objects, an ant and tree, after a five minute delay. Mr. Clough did recite six digits forward and three backwards. He was uncertain of the number of weeks in the year and the author of Hamlet but stated that the sun rises in the east. The claimant correctly interpreted one of two proverbs, "Don't cry over spilled milk." He provided the analogy in two of three abstractions.

The client was able to perform Serial 7s and 3s from 100. He stated the current President is Obama and prior President is Bush but was unfamiliar with Alabama's Governor. Mr. Clough correctly counted backwards from 20 to 1. Without the benefit of intelligence testing, his cognitive functioning is estimated to fall in the Borderline Range.

Tr. 432. Dr. Bentley's diagnostic impressions included generalized anxiety disorder with occasional panic attacks, mild depressive disorder, nicotine dependence, and borderline intellectual functioning. Claimant was "reasonably motivated and cooperative," and his prognosis was favorable.[20] Dr. Bentley also concluded that claimant was capable of managing any funds that might be awarded.[21]

Dr. Bentley examined claimant for the second time on April 8, 2015. Claimant reported "increasing symptoms of depression, anxiety, loss of coping skills, mood swings, irritability and a lack of coping skills since his back injury. He is not coping well with his change of lifestyle. The patient can no longer engage in many activities

---

[20] Tr. 433.

[21] *Id.*

12

that he once performed routinely."[22]  Even so, claimant did not experience any crying

spells, suicidal ideation, rage behavior, hallucinations, paranoia, or bizarre mentation.

During the mental status examination:

> The patient made fair eye contact.  The claimant was in no obvious distress during the interview.  He did not exhibit any limitations in his receptive or expressive communication skills.  His tertiary and immediate memories were intact and consistent with this limited intellectual functioning.  The claimant's mood was reasonably cheerful and congruent with his affect.  There was no obvious evidence of anxiety or restlessness.  There were no indications of phobias[,] obsessions[,] or unusual behaviors.

> Mr. Clough was alert and oriented.  The client failed to recall any of three objects after a five minute delay.  He did recite six digits forward and four backwards.  The claimant indicated that there are 52 weeks in a year and the sun rises in the East but was unfamiliar with the author of Hamlet.  He accurately interpreted one of two proverbs and stated the analogy in three of three abstractions.

> The claimant was able to perform serial 7's and 3's from 200.  He easily spelled the word "world" forward and backwards.  Mr. Clough was able to name national leaders but could not identify any state officials.  The patient did count backward from 20 to 1.

Tr. 376 (alterations supplied).  Claimant reported moderate to severe sleep

disturbance due to back and leg pain, headaches, and seizure disorder.  His social

activities were limited to interaction with immediate family, but he was able to

complete his activities of daily living without assistance.  Dr. Bentley's diagnostic

impression was depressive disorder due to medical condition, and the prognosis for

---

[22] Tr. 375.

claimant's current level of functioning was favorable.  Claimant displayed no indication of symptom exaggeration, and he would be capable of managing benefits if awarded.  Dr. Bentley concluded that claimant's mental conditions would result in mild limitation of his ability to perform work related activities, but most of claimant's work-related restrictions stemmed from his physical health problems.[23]

The ALJ afforded Dr. Bentley's 2010 assessment little weight because it was vague, remote in time to the claimant's January 15, 2015 alleged onset date, and lacked a function-by-function assessment of claimant's ability to do work related activities.[24]  He afforded the 2015 assessment some weight because Dr. Bentley's conclusion that claimant had mild limitations was "consistent with the detailed findings in the mental status examination."[25]  Even so, the ALJ again pointed out that Dr. Bentley failed to provide a function-by-function assessment of claimant's ability to do work related activities.[26]  Those conclusions were consistent with applicable law and supported by substantial evidence.  The record as a whole does not reflect any more than mild limitations as a result of claimant's emotional impairments, and Dr. Bentley is not a specialist in the area of physical conditions.  Moreover, it was reasonable for the ALJ to consider that Dr. Bentley's report lacked a detailed

---

[23] Tr. 375-77.

[24] Tr. 24.

[25] Tr. 23.

[26] Tr. 23-24.

functional assessment.

## D.    Dr. Wilson (2012)

Prior to the September 12, 2017 report discussed above, Dr. David Wilson also examined claimant on September 5, 2012.  During the clinical examination, claimant exhibited obvious pain behaviors like shifting and leaning in his chair.  His thought processes were intact, his speech was clear and normal in rate, and he was cooperative and respectful.  He was not hyperactive, and he denied hallucinations, delusions, ideas of reference, phobias, and obsessive-compulsive behavior.  He had panic-related symptoms like tingling and tightness in his chest, and as a result, he sometimes avoided going out in public.  His affect was appropriate and within normal limits.  He reported feeling depressed about his inability to work and being unable to sleep as a result of pain.  His appetite was good, but his energy was not.  He denied crying spells and suicidal ideation, and his insight and judgment were fair.  Claimant was able to count down from 20 with only one error.  He could perform serial 3's to 24 with no errors, but he could not count down from 100 by 7's.  He could do some math, and his mental control was adequate.  His fund of general information was poor, and his abstract reasoning was below average, causing Dr. Wilson to conclude that his overall verbal skills were in the borderline range.  Claimant displayed some problems with short-term memory, and he could read on only a sixth grade level.  He

had a valid pain profile with resulting depression and anxiety. Even though Dr. Wilson concluded that claimant's problems were mostly physical in nature,

> he does have some cognitive limitations, with intelligence estimated to be in the Borderline range, and he reads at a 6th grade level, so he is not capable of benefitting from any type of academic training/retraining for a non-manual labor job. His depression, and especially his anxiety would also make working very difficult at this point.

> He is capable of managing benefits if they are awarded.

Tr. 461. Dr. Wilson assessed claimant with panic disorder, depressive disorder, and borderline intelligence, in addition to other physical problems, and he assigned a GAF score of 50, indicating serious symptoms.

Dr. Wilson also completed a Mental Health Source Statement form. He indicated that claimant would experience mild limitation in his abilities to understand and carry out very short and simple directions, make simple work-related decisions, ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions. He would experience moderate limitation in his abilities to accept instructions, respond appropriately to criticism from supervisors, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, travel in unfamiliar places or use public transportation, and interact appropriately with the general public. He would experience marked limitation in his abilities to remember locations and work-like procedures, understand and remember detailed

instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform within a schedule, sustain ordinary routines without special supervision, work in coordination or proximity to others without being distracted by them, complete a workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without unreasonable work breaks, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.[27]

The ALJ afforded Dr. Wilson's September 5, 2012 assessment little weight because "[t]he marked limitations assessed by Dr. Wilson are not consistent with more recent consultative and treating source psychological evidence," and because the assessment was "remote and inconsistent with the record as a whole."[28] Claimant has provided no substantive argument (and certainly no convincing one) that the ALJ's treatment of Dr. Wilson's 2012 assessment was improper. To the contrary, the ALJ adequately articulated reasons for affording the assessment only little weight, and the ALJ's decision was supported by substantial evidence. The record as a whole does not support Dr. Wilson's findings of marked limitations.

**E.      Dr. Estock**

---

[27] Tr. 458-63.

[28] Tr. 24 (alteration supplied).

Dr. Robert Estock, a state agency physician, reviewed claimant's file on May 14, 2015, including the consultative opinions of Dr. Morgan and Dr. Bentley. He found that claimant was capable of occasionally lifting and carrying twenty pounds, and frequently lifting and carrying ten pounds. He could stand and/or walk for six hours in an eight-hour work day, and he could also sit for six hours in an eight-hour work day. He could perform unlimited pushing and pulling movements with his hands and feet. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he could never climb ladders, ropes, or scaffolds. He had no manipulative, visual, or communicative limitations. Environmental limitations included avoiding concentrated exposure to extreme heat, extreme cold, wetness, and humidity, and avoiding all exposure to hazards such as machinery and heights. Claimant was not significantly limited in his abilities to remember locations and work procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychological symptoms; perform at a consistent pace without unreasonable breaks; ask simple questions; request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take normal precautions; travel in unfamiliar places or use public transportation; set realistic goals; and make plans independently of others. He was moderately limited in his abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. Dr. Estock opined that claimant would have trouble with more detailed tasks and instructions, and that he would be able to maintain attention and concentration for two hours with customary rest breaks. He recommended a well-spaced work environment for maximum concentration. He also recommended that claimant's contact with the public should be infrequent and non-intensive, that supervision should be tactful, constructive, and non-threatening, and that changes in the workplace should be infrequent and gradually introduced. In addition to those non-exertional impairments, claimant would be limited to work at the light level of exertion.[29]

The ALJ afforded significant weight to Dr. Estock's assessment because it was

---

[29] Tr. 66-77.

"supported with relevant evidence and . . . consistent with the record as a whole."[30]

Indeed, the ALJ's residual functional capacity finding either mirrored or imposed

even greater restrictions than Dr. Estock's assessment:

> After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally push or pull with the lower extremities; the claimant cannot climb ladders, ropes, or scaffolds; the claimant can occasionally climb ramps and stairs, balance, kneel, crouch, stoop, and crawl; the claimant should avoid concentrated exposure to extreme heat, extreme cold, and vibration; claimant should have no exposure to dangerous machinery or unprotected heights; the claimant cannot perform work requiring walking on uneven or slippery surfaces; the claimant cannot operate motor vehicles or work around large open bodies of water. During a regularly scheduled workday, or the equivalent thereof, the claimant can understand and remember short and simple instructions but is unable to do so with detailed or complex instructions; the claimant can do simple, routine, repetitive tasks but is unable to do detailed or complex tasks; the claimant should have no more than occasional contact with the general public; the claimant can deal with changes in the workplace, if introduced occasionally and gradually and are well-explained; the claimant should perform jobs dealing primarily with things, not people.

Tr. 20.

Claimant asserts that ALJ improperly gave more weight to Dr. Estock's opinion

than the other consultative examiners' opinions because Dr. Estock only reviewed

claimant's medical file and did not examine him. That argument is not supported by

applicable law. To the contrary, Social Security regulations provide that the opinions

of state agency psychological consultants are entitled to substantial consideration.

---

[30] Tr. 23 (ellipsis supplied).

*See* 20 C.F.R. §§ 416.913a(b)(1) & 416.927(e) (stating that, while the ALJ is not bound by the findings of a State Agency psychological consultant, the ALJ should consider such a consultant to be both "highly qualified" and an "expert" in Social Security disability evaluation). *See also Stacy v. Commissioner, Social Security Admininistration,* 654 F. App'x 1005, 1009 (11th Cir. 2016) ("The ALJ may consider the reports and assessments of state agency physicians as expert opinions."). Moreover, the record supports the ALJ's decision to afford Dr. Estock's opinion more weight than the other consultative physician opinions.

### III. CONCLUSION

In accordance with the foregoing, this court concludes that the ALJ's decision was supported by substantial evidence and in accordance with applicable law. It will be affirmed. Claimant's motion to correct the administrative record will be denied. An appropriate order will be entered contemporaneously herewith.

DONE this 17th day of May, 2019.

_____
United States District Judge